UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEANNE M. TOTTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-00510-DML-JMS |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Order on Judicial Review

Plaintiff Jeanne M. Totton applied in June 2011 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging she has been disabled since July 1, 2009. Acting for the Commissioner of the Social Security Administration following a hearing on November 13, 2012, administrative law judge David L. Welch issued a decision on January 8, 2013, that Ms. Totton is not disabled. The Appeals Council denied review of the ALJ's decision on February 3, 2014, rendering the ALJ's decision for the Commissioner final. Ms. Totton timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Totton contends that the ALJ erroneously evaluated the severity of her mental and physical impairments and their effect on her functioning, principally by failing to give adequate weight to the opinions of Ms. Totton's primary care physician, Dr. Nancy Stirling, and by failing properly to assess her credibility. Ms.

Totton contends these errors led the ALJ to adopt an RFC that is not supported by substantial evidence which, in turn, resulted in an erroneous determination that Ms. Totton can perform her past relevant work.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Totton's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits). Ms. Totton is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and RFC; if so, then she is not disabled.

The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her

3

vocational profile and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Applicable Standard of Review

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Totton was 45 years old at the alleged onset of her disability on July 1, 2009, and 48 years old at the time of the ALJ's decision. Her onset date coincides with a surgical fusion procedure to her right ankle. Ms. Totton had first broken her

right ankle in a car accident in the 1980s. The July 2009 surgery was at least the sixth surgical procedure to her right ankle, and she had undergone the last procedure in 2003 for debridement (removal of dead or damaged tissue) of her ankle and repair of a ligament. (R. 347). She had another surgery in March 2010 to remove hardware from the ankle area.

      Ms. Totton has an Associate Degree in Applied Sciences and completed a five-year apprenticeship program under the auspices of the International Brotherhood of Electrical Workers. (R. 34). She worked as a journeyman electrician for many years, though was required to be off work for periods of weeks or months during that career when she underwent ankle surgeries and recovery from them. (R. 35-38). Ms. Totton testified she was not able to work at all in 2003, but in 2004 and during part of 2005, she worked as a customer service representative for Indianapolis Newspapers. Beginning in 2005 and continuing until her foot surgery in July 2009, she worked in building maintenance at apartment complexes. (R. 39-40).

      The ALJ determined at step one that Ms. Totton had not engaged in substantial gainful activity since her alleged onset date of July 1, 2009. At step two, the ALJ found Ms. Totton suffered from three severe impairments: obesity, major dysfunction of her right ankle, and degenerative disc disease. He found Ms. Totton's anxiety and depression were non-severe, when measured against the B criteria of the mental health listings. Specifically, he decided that her mental impairments resulted in only mild limitations in daily living activities, social

functioning, and in concentration, persistence, or pace, and that she had had no episodes of decompensation. At step three, the ALJ found no listings were met. Ms. Totton does not challenge the ALJ's determination she is not presumptively disabled at step three. And although she challenges the ALJ's failure to find her mental impairments to be severe at step two, the substance of her challenge is not that any step two error requires remand, but that the ALJ's failure to evaluate the seriousness of her mental impairments at step two led him erroneously to fail to include appropriate limitations in the RFC stemming from her mental impairments.

For purposes of steps four and five, the ALJ determined that Ms. Totton has the residual functional capacity to perform a range of light work, at least in terms of the typical lifting and carrying requirements for light work (20 pounds occasionally, 10 pounds frequently). Otherwise, her RFC more closely resembles sedentary work. She is limited to standing or walking up to two hours, but can sit up to six hours in an 8-hour work day. She can never push or pull with the right upper extremity or operate a foot control with the right lower extremity. The ALJ added other postural limits and hazard-avoidance requirements, but did not include any accommodations because of mental impairments. (R. 16). The ALJ's RFC is nearly a verbatim adoption of an opinion given by a medical expert (Dr. Paul Boyce) at the hearing. *See* R. 45-46.

Based on the opinion of a vocational expert that the demands of Ms. Totton's past relevant work as a customer service representative are consistent with the RFC, the ALJ found that Ms. Totton is capable of performing that work.

Accordingly, the ALJ found Ms. Totton not disabled at step four and did not reach step five.

## Analysis

Ms. Totton's assertions of error concern the ALJ's evaluation of both her physical and mental impairments, the weight he gave to the opinions of Ms. Totton's treating physician, and his evaluation of Ms. Totton's credibility. Strangely, the Commissioner did not address Ms. Totton's arguments about the ALJ's errors in evaluating her credibility. Because there are serious errors in that evaluation and because Ms. Totton's statements about her work capacity, if believed, are inconsistent with the ALJ's RFC, the court must remand.

I. **If Ms. Totton's testimony is believed, her work capacity is not compatible with her past relevant work.**

Ms. Totton testified that her right ankle problems and pain in her back make standing and sitting very difficult. She said she can stand for 20-30 minutes at one time and then needs to sit or lie down, and can sit for 30 minutes at one time, and then needs to get up and move around or lie down. (R. 55-56, 65). She uses a TENS unit[1] for pain management and takes several medications to treat the pain, including a narcotic and a muscle relaxer. (R. 56-57). Ms. Totton also daily takes medication, prescribed by her physician, for relief of anxiety and depression. (R. 57). She testified that she is not capable of performing the sedentary customer service

---

[1] TENS stands for Transcutaneous Electrical Nerve Stimulation. Low voltages of electrical current are delivered to the body for pain relief. *See* http://www.webmd.com/pain-management/tc/transcutaneous-electrical-nerve-stimulation-tens-topic-overview.

7

job she had held at the newspaper because she does not have the ability to sit as long as that job required, and she cannot stand on her right foot for any time at all. (R. 60-61). When she stands, she shifts to her left leg, and then that leg hurts and her back and hips hurt. (R. 61). In addition, Ms. Totton stated her anxiety symptoms are incompatible with working the customer complaint activities that that job had entailed ("people would call and scream at you on the phone, and get all irate with you"). (R. 61-62).

Ms. Totton's counsel asked the vocational expert whether Ms. Totton could perform the job of customer service representative if she needed to follow a 25-30 minute period of standing with a period of sitting or lying down. The VE answered that there's no work if lying down is required. (R. 76-77). If lying down is not required, but a person needs to alternate sitting and standing at will, the VE testified about certain light jobs that are available, such as a silver wrapper (wrapping up silverware in a napkin), a cashier, a telephone quotation clerk, or a food and beverage order clerk. (R. 78-79). Ms. Totton's past work as a customer service representative was not among the jobs the VE testified permitted alternate sitting/standing positions.

## II.   Ms. Totton challenges the ALJ's evaluation of her credibility.

Ms. Totton argues the ALJ's reasons for discounting her credibility do not withstand scrutiny. The court agrees. Although the court gives special deference to an ALJ's assessment of a claimant's credibility, that assessment must still have reasoned underlying support. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008).

As Ms. Totton argues, there are flaws in each of the reasons the ALJ gave for discounting Ms. Totton's credibility. First, the ALJ strived to find an inconsistency about medication side effects. He stated that Ms. Totton did not report to her surgeon "adverse" side effects from her medications, and contrasted that comment with her personal care physician's statement that the medications cause drowsiness, dizziness, and dry mouth, and further with the notion that Ms. Totton did not testify to side effects. In fact, however, Ms. Totton did testify to side effects. She said her medications make her drowsy, give her dry mouth, and have a diuretic effect. (R. 62). Further, there is no apparent inconsistency in a person's description of drowsiness or dry-mouth characteristics while noting no "adverse" side effects. The ALJ did not inquire what was meant by the absence of "adverse" side effects, and it seems to the court that a person experiencing normal or expected effects of medication—like drowsiness or dry-mouth—might not consider them the kind of "adverse" effects a doctor would be particularly inquiring of.

Second, the ALJ contrasted Ms. Totton's statement in a function report that she uses a cane when walking on uneven ground with his observation that "there is no documentation that the claimant has employed the use of an assistive device." (R. 19). Here, again, there is no necessary inconsistency between favoring the use of a cane over uneven ground and the absence of a notation in medical records that Ms. Totton likes to use a cane if she is walking over uneven ground. Ms. Totton did not suggest in her function report that she uses a cane generally. If she had, that use might be expected to be documented in at least some of the medical records.

9

Ms. Totton's walking difficulties *are* documented throughout the medical record, and are traceable to her years of difficulties with her right ankle and serial surgeries, including a fusion in 2009. Examinations by Ms. Totton's treating physicians and the agency consultative physician noted her antalgic (limping) gait, abnormal foot positioning, and atrophy of her right foot and calf (*e.g,* R. 473), characteristics that do not seem at all inconsistent with a person's use of a cane when walking over uneven ground.

Third, the ALJ reasoned that Ms. Totton's daily living activities "are not as limited as one would expect given the extent of her allegations of disabling symptoms." (R. 19). The ALJ cited Ms. Totton's ability to wash a sink load of dishes, cook, clean, do laundry and minor home repairs, and feed and take care of her chickens, cats, and bird. But these activities and Ms. Totton's description of the ways in which she undertakes them (with breaks and with help) are not inconsistent with her testimony regarding the difficulties in sitting or standing, and the need to change positions or lie down after 20-30 minutes of either sitting or standing. The Seventh Circuit has often criticized the propensity of administrative law judges in Social Security disability cases to equate a claimant's ability to keep her life and household from falling to pieces with the ability to work a full-time job; that criticism is apt here and undermines the ALJ's credibility evaluation. In *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012), the court wrote:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, . . . and is not held to a minimum standard of performance as she would be by an

> employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Id.* at 647.

The Commissioner did not defend any of the ALJ's grounds for his credibility determination, and the court cannot find them defensible either. Because of the lack of reasoned support, the court determines the ALJ's evaluation of Ms. Totton's credibility is "patently wrong" and requires reversal of the ALJ's decision. *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations and quotations omitted) (when ALJ's credibility determination lacks support, "we will declare it to be 'patently wrong' and deserving of reversal").

### III.  Other Asserted Errors

It is not necessary for the court to address Ms. Totton's other assertions of error, but the court will broadly address her contention the ALJ did not adequately evaluate her mental impairments. The ALJ did not include in his RFC any accommodation for Ms. Totton's mental impairments of anxiety and depression. He found the mental impairments non-severe (and there is some support in his decision for that determination) but then did not consider whether, even though non-severe, any accommodations were appropriate. There is no discussion in the RFC section of the decision about Ms. Totton's mental impairments, except a comment that her physician's description of their limiting effects has no weight because that doctor is not a mental health professional (even though she is the one who has prescribed medication for anxiety and depression for years). The ALJ did not at all address

Ms. Totton's descriptions at the hearing of their limiting effects and in particular her statement that her anxiety prevents her from working as a customer service representative who must be on the receiving end of customer complaints all day long. The ALJ was required to at least address this testimony and state why he discounted it (or ask the VE whether a person who has problems with stress is suitable for a customer service job). His finding that the mental impairments were not severe did not relieve him of the obligation to address any limitations from non-severe impairments in formulating the RFC and determining whether any such limitations are compatible with Ms. Totton's past relevant work. *Denton v. Astrue,* 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.")

## Conclusion

Ms. Totton's statements regarding the limiting effects of her impairments, if credited, prevent her from performing her past relevant work. Because the ALJ's credibility determination is patently erroneous, the court must reverse and remand. The Commissioner's decision that Ms. Totton is not disabled is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g).

So ORDERED.

Dated: September 1, 2015

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system